James T. Smith (*pro hac vice* motion to be filed)
Evan H. Lechtman (*pro hac vice* motion to be filed)
Lewis W. Schlossberg (*pro hac vice* motion to be filed)
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
215) 569-5500

Jeffrey G. Stark
John V. Terrana
Michael A. Ciaffa
Forchelli, Curto, Deegan, Schwartz
Mineo & Terrana, LLP
The Omni
333 Earle Ovington Blvd., Ste. 1010
Uniondale, New York 11553
516-248-1700

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| THE RETAIL PROPERTY TRUST, | Civil Action No.: 17-2193 |
| Plaintiff, | |
| -vs- | |
| | **COMPLAINT** |
| NASSAU COUNTY DEPARTMENT OF ASSESSMENT, JAMES E. DAVIS, AS ACTING COUNTY ASSESSOR, THE NASSAU COUNTY LEGISLATURE and THE COUNTY OF NASSAU, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff, The Retail Property Trust ("Plaintiff"), for its claims and causes of action against Defendants Nassau County Department of Assessment, James E. Davis, in his official capacity as Acting County Assessor, the Nassau County Legislature, and the County of Nassau (collectively "Defendants"), alleges and avers as follows.

## BACKGROUND

1. This matter arises out of Section 6-30.0, *et seq*. of the Nassau County Administrative Code, which requires income-producing property owners within the County to file an Annual Survey Income & Expense report (an "ASIE" report) with information including all income derived from and all expenses attributable to the operation of the property. Originally

enacted in 2004, the law provided for a penalty of $500 for non-compliance.  The law was amended in December 2013, however, to include draconian new penalties for non-compliance, which are grossly disproportional to the gravity of the offense and shocking to one's sense of fairness.  Instead of a uniform penalty of $500 for non-compliance, the law now provides for penalties to be assessed as a percentage of the "fair market value" of the property, resulting in the imposition of *millions of dollars in penalties* to commercial property owners like Plaintiff for alleged non-compliance.

2.      Plaintiff owns and operates Roosevelt Field, a large upscale shopping mall located in Nassau County.  In connection with ASIE Reports due for 2013 and 2014, Plaintiff has been assessed millions of dollars in penalties for not submitting ASIE reports for Roosevelt Field.  Moreover, Plaintiff has been assessed such shocking penalties without ever having received proper notice of non-compliance with the new ASIE law, without ever having received a hearing of any kind regarding the validity or proper extent of such penalties, and without ever having received any reasoned analysis or rational basis for the imposition of such penalties.  For the reasons set forth herein, the new ASIE law should be found unconstitutional, and the penalties assessed against Plaintiff declared invalid.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action pursuant to the Fifth, Eighth and Fourteenth Amendments to, the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgments Act, 28 U.S.C. § 2201.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiff's federal claims arise under the Constitution and laws of the United States.  This Court also has jurisdiction under 28 U.S.C. § 1343, because Plaintiff's federal claims seek redress of

the deprivation, under color of State law, statute, ordinance, regulation, custom, or usage, of rights, privileges, and immunities guaranteed by the Constitution of the United States. Additionally, this Court has jurisdiction under 28 U.S.C. § 1332 in that it is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5.      This Court has supplemental jurisdiction over the state law claims set forth herein pursuant to 28 U.S.C. § 1367(a), which provides that supplemental jurisdiction exists "over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

6.      Venue is proper under 28 U.S.C. § 1391, because a substantial part of the property that is the subject of the action is situated in this District.  Venue is also proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this lawsuit occurred in this District.  Additionally, venue is proper under 28 U.S.C. § 1391 because Defendants are all citizens of the State of New York and reside in this District for purposes of venue.

## PARTIES

7.      Plaintiff is a Massachusetts business trust with a principal place of business at 225 West Washington Street, Indianapolis, Indiana 46204.  Plaintiff owns and operates Roosevelt Field, a large upscale shopping mall located in Nassau County, at 630 Old Country Road, Garden City, NY 11530.  Roosevelt Field is the second-largest retail shopping mall in the State of New York with over 2 million square feet of gross leasable space.

8.      Defendant Nassau County Department of Assessment is a body politic organized under the laws of the State of New York, with a principal place of business at 240 Old Country Road Mineola, NY 11501.  Defendant is a department of the County of Nassau, and is

3

responsible by law for assessing all residential and commercial properties in Nassau County on an annual basis.

9.      Defendant James E. Davis, is Acting County Assessor for Nassau County.  His powers allegedly include, *inter alia*, the power to impose monetary penalties upon an owner of income producing property in Nassau County pursuant to the provisions of the ASIE law.

10.      Defendant Nassau County Legislature is a county legislative body organized under the laws of the State of New York, with a principal place of business at 1550 Franklin Ave., Mineola, NY 11501.

11.      Defendant County of Nassau is a county organized under the laws of the State of New York, with a principal place of business at One West Street, Mineola, NY 11501.

12.      At all relevant times, Defendants have acted, and continue to act, under color of law. They purport to have acted pursuant to grants of authority pursuant to Nassau County's Charter, its Administrative Code ("NCAC"), and the laws of the State of New York.

## FACTS

### The ASIE Law

13.      The original NCAC §6-30 was enacted in 2004.  It mandated that "upon request of the Board of Assessors," commercial property owners shall provide "a statement of all income derived from and all expenses attributable to the operation of such property."  Failure to do so would subject the commercial property owner to a $500 civil penalty.

14.      This provision as originally enacted remained in force until 2013.

15.      In December 2013, the Nassau County Legislature passed Local Law 8 of 2013, which materially changed the provisions of NCAC § 6-30.0.  *See* Exhibit A, Local Law 8-2013. These changes included: (1) requiring electronic submission of income and expense statements

4

in accordance with rules prescribed by the Assessor (NCAC § 6-30.0[d]); (2) greatly increasing monetary penalties for noncompliance with the ASIE law, with allowable fines ranging from 0.25% up to 0.75% of the "fair market value" of an income producing property (NCAC §6-30.0[f]); and (3) transforming unpaid monetary penalties into a lien on the property which "may be collected, sold, enforced or foreclosed in any manner provided by law" (NCAC §6-30.0[j]).

16.     The newly enacted law contains strict provisions concerning the required content and format of the submission of these annual income and expenses statements.

17.     The newly enacted law also includes a provision authorizing the Assessor "to promulgate rules and regulations necessary to effectuate the purpose" of the ASlE law.  NCAC § 6-30.0[i].

18.     Rules and regulations were enacted by the Assessor in connection with NCAC § 6-30.0(i).  *See* Exhibit B, Nassau County Department of Assessment's Rules for Income and Expense Statements (the "Assessor's Rules").  In pertinent part, § 2.0(e) of the Assessor's Rules provides that an owner's "failure ... to submit an income and expense form and any applicable addendums by the filing deadline shall subject the owner to the penalties provided in § 3.0 of these regulations." *See* Exhibit B, Assessor's Rules, § 2.0(e).  The same section further provides that the term "failure to file an income and expense statement" may include, but is not limited to: (1) "failure to file in the electronic format prepared by the Department of Assessment"; (2) "failure to submit a separate income and expense statement for each parcel"; (3) "failure to complete forms in a legible manner"; (4) "failure to submit an addendum"; (5) "failure to file a substantially complete and accurate income and expense statement"; (6) "failure to provide data for the appropriate accounting period"; and (7) "failure to provide a complete and accurate and itemized list of income and expense data." *Id*.

19.     Section 3.0 of the Assessor's Rules, entitled "Penalties for Failure to File," authorizes the imposition of "monetary penalties" as follows:

(a) *Monetary penalties*.

(1) Owners of income-producing property who fail to file an income and expense statement by the first day of April, or ... by the extended due date, shall be subject to a penalty not to exceed one quarter of one percent (.25%) of the final equalized assessed valuation for the property for the tax year in which such a statement was required to be filed.

(2) Owners of income-producing property who fail to file an income and expense statement by the thirteenth day of September shall be subject to a penalty not to exceed one half of one percent (.5%) of the final equalized assessed valuation for the property for the tax year in which such a statement was to be filed.

(3) If, in the year immediately following the year in which an owner fails to file an income and expense statement by the thirtieth day of September, the owner again fails to file an income and expense statement within the time provided in §3.0(a)(l) of these regulations... , such owner shall be subject to a penalty in an amount not to exceed three quarters of one percent (.75%) of the final equalized assessed value of such property determined for the tax year in which such a statement was to be filed. Such owner shall also be subject to a penalty of up to three quarters of one percent (.75%) of such final equalized assessed value in any year immediately succeeding a year in which a penalty of up to three quarters of one percent could have been imposed, if in such succeeding year the owner fails to file an income and expense statement within the time prescribed in §3.0(a)(a) of these regulations.

Exhibit B, Assessor's Rules, § 3.0.

20.     The next section of the Assessor's Rules (§ 4.0), entitled "Hearings," incorporates critically important provisions requiring issuance of notices to owners who fail to file timely statements of income and expenses, advising them that they are allowed an "opportunity to cure" any alleged failure to file, and the "opportunity for a hearing prior to the imposition of the penalties contained in § 3.0 of these rules."  Exhibit B, Assessor's Rules, § 4.0.

21.     Subsection (a) of § 4.0 of the Assessor's Rules provides:

(a) *General provisions*.

(l) *Notice of failure to file timely statements and opportunity to cure*.

6

     (i)  Owners of income-producing property who fail to file a timely income and expense statement in compliance with Nassau County Administrative Code §6-30.0 and these rules ***shall be notified of such failure to comply and of the opportunity for a hearing prior to the imposition of the penalties*** contained in § 3.0 of these rules.

     (ii)  Except as provided in subparagraph (iii) of this paragraph, ***the notice shall also provide that such owners may avoid penalties for failure to file by filing a properly completed income and expense statement*** no later than thirty (30) days following the date of the notice ...

  (2)  *Opportunity for hearings*. Owners of income-producing property who were served with a notice pursuant to this subsection shall have thirty (30) days from the date of such notice to request a hearing before the Department of Assessment by filing a petition for hearing on the form provided by the Department Assessment.

Exhibit B, Assessor's Rules, § 4.0 (emphasis added).  *See also* Exhibit A, NCAC § 6.30.l(f) ("The penalties prescribed in this paragraph shall be determined by the Assessor or his designee *after notice and an opportunity to be heard*.").

22.     In addition to the above, the authority of the Nassau County Assessor to require the submission of ASIE reports from commercial property owners has been significantly broadened by the 2013 amendments to the ASIE law by giving the Assessor the discretionary power to "waive any rule" specifying the format of the submission of these statements. *See* Exhibit A, NCAC § 6-30.l(d).

23.     The authority of the Assessor has also been augmented to include the power to "require rent rolls, lease information, contamination reports ..."  *See* Exhibit A, NCAC § 6-30.l(d) (emphasis added).

24.     NCAC §6-30.l(f) now further extends the authority of the Assessor to directly determine and impose penalties on commercial property owners for any perceived "failure to file" ASIE reports, with the penalty to be based on a percentage of "*fair market value of such*

*income-producing property as such value is determined by the Assessor for the current fiscal year.*"  *See* Exhibit A, NCAC §6-30.l(f) (emphasis added).

25.     Moreover, NCAC §6-30.1(g) now provides the Assessor the authority to determine in the Assessor's discretion whether a commercial property owner has failed to file. *See* Exhibit A, NCAC §6-30.l(g).   Under this subsection, the Assessor now has the broad discretion to determine if the ASIE reports were submitted in a "legible manner"; whether the reports were filed with "substantially complete and accurate income and expenses statements"; whether the forms provided data for the correct tax year; and whether the forms "provide[d] a complete, accurate, and itemized list of income and expense data."  *See* Exhibit A, NCAC §6-30.l(g).

26.     Beyond these new powers, the Assessor has also been given the power to enforce any penalties for non-compliance *as liens on the commercial property owner's property*.  *See* Exhibit A, NCAC § 6-30.l(j) ("The penalties prescribed in this section shall be a lien on such income producing property when entered by the Assessor in the records in which charges against the property are to be entered, and shall continue to be, until paid, a lien on such property.").

27.     Such liens can be foreclosed upon and can result in a complete forfeiture of the property.  *See* Exhibit A, NCAC § 6-30.l(j) (stating that the liens "may be collected, sold, enforced or foreclosed in any manner provided by law.") (citing NCAC 5-24.0 *et seq*).

28.     With respect to challenging a penalty assessed under the new ASIE law, even if a hearing is provided (and Plaintiff has been provided no such hearing), the Assessor's Rules ensure that the Assessor will still be able to make the final determination as to the validity and scope of any such penalties, thereby effectively precluding independent and impartial review of the matter.

29.     First, the Assessor has the power to designate the person to serve as the hearing officer for any hearing challenging a penalty, thereby removing any independent and impartial review of the challenged penalty. *See* Exhibit B, Assessor's Rules, § 4.0(a)(5).

30.     Second, the hearing officer may only review certain narrow matters, excluding whether the income producing property owner was ever notified of his obligation to file an income and expense statement. *See* Exhibit B, Assessor's Rules, § 4.0(a)(7).

31.     Third, in any hearing challenging the validity or extent of a penalty assessed for non-compliance with the new ASIE law, the burden of proof regarding such matters *has been shifted to the property owner rather than to the Assessor.* *See* Exhibit B, Assessor's Rules, § 4.0(a)(1 l).

32.     Fourth, *it is the Assessor who ultimately makes the final determination* as to whether and to what extent penalties are to be imposed following the hearing. *See* Exhibit B, Assessor's Rules, § 4.0(c)(7).

33.     Accordingly, the new ASIE law provides for no meaningful review of any challenge to penalties unilaterally imposed by the Assessor in its sole and unlimited discretion for non-compliance with the new ASIE law.

**Prior Challenges To The ASIE Law**

34.     Approximately two months after the date Local Law 8 of 2013 was passed, two owners of commercial income producing properties in Nassau County commenced litigation challenging the County's authority pursuant to state law to enact the new ASIE law. *See Boening v. Nassau County Department of Assessment*, Index No. 1818/2014 (Sup. Ct. Nassau Co.) (the "*Boening I*" litigation). Specifically, the *Boening* plaintiffs challenged whether Nassau County was "fully empowered and authorized under the Municipal Home Rule Law to enact and

follow Local law § 8-2013." Exhibit C, 10/13/16 *Boening* Decision.  The issue before the court in *Boening I* was thus limited to whether Nassau County had been delegated sufficient authority under New York State law to enact such a law.

35.     On March 4, 2014, a temporary restraining order was issued in *Boening I*, enjoining enforcement of the new ASIE law in its entirety.  Although the TRO was dissolved and vacated by order dated December 9, 2014, the Department of Assessment chose not to enforce the ASIE law while awaiting the Supreme Court's judgment on the merits of that litigation.

36.     On July 3, 2015, the *Boening I* court ruled that Nassau County had been given sufficient authority under the laws of the State of New York to enact the new ASIE law, holding that  the Municipal Home Rule Law was sufficiently broad to cover the enactment of Local law § 8-2013.  Importantly though, the *Boening* court was careful to note that it was not ruling on any issues pertaining to the constitutionality or validity of the penalties imposed by the new ASIE Law or the enforcement of the new ASIE Law.  On this issue, the court commented:

> the parties are to draw no inferences concerning the validity of the implementation and application of the enforcement mechanisms of this ordinance because it would be premature to speculate on the outcome of any appropriate proceedings instituted to review penalties or other enforcement mechanisms which this Court finds are distinct and severable from the core filing requirement which this Court has ruled upon.

37.     A second action was thereafter filed by the *Boening* plaintiffs in December 2015, seeking *inter alia* an order enjoining the County from levying penalties pursuant to the ASIE law until the court could determine: (i) whether the County could legally enforce the penalties; and (ii) whether the penalties could pass constitutional muster concerning the plaintiffs' rights pursuant to the due process and excessive fines clauses of the New York State Constitution and the United States Constitution.  *See Boening v. Nassau County Department of Assessment*, Index No. 010811/2015 (Sup. Ct. Nassau Co.) (the "*Boening II*" litigation).

10

38.     By order dated January 4, 2016, a Temporary Restraining Order ("TRO") was issued in *Boening II*, enjoining the Nassau County defendants from enforcing any penalties under the ASIE law, *but otherwise not restricting the Nassau County Defendants' abilities to collect income and expense information from owners of commercial income producing properties within the County*.

39.     The *Boening* plaintiffs thereafter filed income and expense statements in an attempt to comply with the new ASIE law.  The County subsequently responded by moving to dismiss the *Boening II* lawsuit on the basis of mootness, and on August 17, 2016, the TRO was modified in *Boening II* to the extent that the Assessor and Nassau County were, as of that date, "authorized and empowered to undertake all actions to execute and enforce" the ASIE Law, *except that the Assessor and County were still enjoined from "collecting any penalty" or "imposing any lien."*

40.     The latter ruling was followed by a written decision on October 13, 2016, dismissing *Boening II* as non-justiciable and moot.  *See* Exhibit C, 10/13/16 *Boening* Decision. The court did so solely on the ground that Nassau County had determined it would "neither seek nor impose any penalty of any kind" upon the *Boening* plaintiffs.  *Id*.  The court, however, explained: "*This Court notes that yet again, the legality of the penalties including the procedure by which they are imposed as well as their propriety has NOT been determined in this action.*" *Id*.

41.     These issues, therefore, remain undecided by any court.  Although 11 new state court actions have been initiated by numerous income-producing property owners in Nassau County (not including Plaintiff) against several of the Defendants in this action in the Supreme Court of the State of New York, Nassau County, challenging the assessment of civil monetary

penalties and/or the imposition of liens pursuant to Nassau County Administrative Code§ 6-30.0 and the rules and regulations enacted thereunder, the claims in those cases have not yet been determined.  The court issued temporary restraining orders enjoining the enforcement of the penalties assessed under the new ASIE law in these cases, and a decision regarding motions for a preliminary injunction filed in these cases is expected in the near future.

**Plaintiff Has Been Improperly Assessed Millions Of Dollars For Non-Compliance**

42.    Since 2013 Plaintiff has declined to submit ASIE reports for Roosevelt Field, as to do so would necessarily disclose highly confidential and proprietary information without sufficient protections, which would substantially impair Plaintiff's ability to compete effectively in the marketplace.[1]

43.    The ASIE reports require with respect to each income producing property a "statement of all income derived from and all expenses attributed to the operation of such property."  NCAC §6-30.1(b).  The ASIE Law provides that the Assessor may "require rent rolls, lease information, contamination reports ...."  *See* Exhibit A, NCAC § 6.30.l(d) (emphasis added).  Pursuant to the Assessor's rules (§ 2.0[c][5]), rent rolls, if available, must be included as an addendum to the ASIE.

44.    The materials requested by the Assessor include, among other things, rental rates, percentage rent, ancillary charges, and tenant improvement allowances.  Plaintiff considers such information to comprise its confidential commercial information.  Because Plaintiff's tenants individually negotiate rent, percentage rent and tenant improvement allowances, among other

---

[1] The one exception: after receiving from Defendants a notice of non-compliance for not submitting an ASIE report for 2015, Plaintiff electronically submitted on January 28, 2017 the income and expense information for 2015 and emailed rent rolls for 2015. Shortly thereafter, however, Plaintiff electronically deleted the income and expense information and then requested the return of the rent rolls due to concerns over the potential disclosure of the confidential information set forth in those materials.

things, if such information were to become public or known to Plaintiff's competitors or other potential tenants, it would be extremely harmful to Plaintiff's business interests.

45.     As such, given the expansive and highly confidential nature of the information demanded in the ASIE reports, there is a substantial risk that disclosure of such information could seriously impair Plaintiff's interests with regard to its ownership and operation of Roosevelt Field.

46.     Although the new ASIE law contains confidentiality provisions, on information and belief, there are no mechanisms in place to reasonably assure that the confidentiality of Plaintiff's information will, in fact, be maintained.

47.     Moreover, the new ASIE law expressly allows for "the publication of statistics so classified as to prevent the identification of particular statements and the items thereof."  *See* Exhibit A, NCAC § 6.30.l(h).

48.     Given the uniqueness of Roosevelt Field, any published statistics of data from commercial property owners in Nassau County could reveal specific information pertaining to Roosevelt Field within the statistics.  This could seriously damage Plaintiff's competitive advantage in the marketplace as well as impair its ability to maintain the secrecy of its confidential information.

49.     When originally enacted in 2004, the ASIE law provided for a penalty of only $500 for non-compliance.  With the enactment of the new ASIE law in December 2013, however, the original $500 penalty suddenly transformed into a multi-million dollar penalty for income-producing property owners like Plaintiff.

50.     On December 12, 2016, Defendants sent Plaintiff notices of penalties for non-compliance with the new ASIE law with regard to 2 of the 32 parcels comprising Plaintiff's

Roosevelt Field property. *See* Exhibit D, 12/12/16 Assessment Notices. The notices purported to assess penalties totaling $4,753,209.00 for non-compliance with the new ASIE law, for years 2013 and 2014. The penalties purportedly were assessed as a percentage of the "fair market value" of the Property (as determined by Defendants).

51.     Prior to the change in the ASIE law in December 2013, those same penalties for non-compliance would have been a mere $500 per year.

52.     Plaintiff has not yet received notices of penalties for non-compliance with the new ASIE law regarding the other 30 parcels comprising its Roosevelt Field property, although it is expected that once Defendants issue those notices, Plaintiff will be assessed millions of dollars in additional penalties for non-compliance.

53.     Further, Plaintiff has not yet received from Defendants notices of penalties for non-compliance with the new ASIE law for years 2015 or 2016. When these notices are issued by Defendants, it is anticipated that Plaintiff will be assessed with millions of dollars in additional penalties.

54.     Accordingly, beyond the $4.8 million in penalties that Defendants have already assessed against Plaintiff for non-compliance with the new ASIE law, Plaintiff is currently exposed to many millions of dollars in additional penalties that Defendants will likely seek to assess against Plaintiff for purported non-compliance with the new ASIE law from 2013-2016. It is also anticipated that Defendants will seek to place a lien on Plaintiff's Roosevelt Field property in the amount of the penalties imposed for non-compliance with the new ASIE law from 2013-2016, which could result in the foreclosure and loss of that Property.

55.     In addition, the imposition of any such liens on Plaintiff's Property could severely disrupt Plaintiff's ability to conduct its business, as it could impact Plaintiff's ability to obtain financing as well as Plaintiff's relationships with its current and prospective tenants.

56.     As set forth below, the new ASIE law should be found unconstitutional, and the penalties assessed against Plaintiff invalid.

### COUNT I: VIOLATION OF EXCESSIVE FINES CLAUSE

57.     Paragraphs 1 through 56 are incorporated as if set forth in full here.

58.     The Defendants have committed acts which operate to deprive Plaintiff of its rights secured by the Constitution of the United States.

59.     In particular, Defendants have violated the prohibition against imposing excessive fines pursuant to the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, which provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const., Amdt. 8.

60.     Pursuant to 42 U.S.C. § 1983, Plaintiff is authorized to file suit against Defendants to vindicate its rights under the United States Constitution.

61.     The Excessive Fines Clause of the Eighth Amendment embodies the notion that there must be some proportionality between offense and punishment.  It limits the government's power to extract payments, whether in cash or in kind, as punishment for an offense.

62.     A fine is punitive and violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the offense.

63.     The new ASIE law, both on its face and as applied here, violates the Excessive Fines Clause.

64.     Conduct that for many years was punishable by a mere $500 fine became punishable in 2014 by a fine in the millions of dollars under the newly enacted ASIE law.

65.     Following the enactment of the new ASIE law, without notice or a hearing, Defendants started punishing Plaintiff with fines *in the millions of dollars* for non-compliance with the ASIE law.  Defendants' fines imposed on Plaintiff since 2014 for non-compliance with the new ASIE law are grossly disproportional to the gravity of the offense.

66.     Defendants have acted under color of state law.

67.     A valid case or controversy exists for this Court to declare the new ASIE law and Defendants' efforts to enforce the new law unconstitutional, because Defendants have already notified Plaintiff that it has been assessed millions of dollars in fines for non-compliance with the law, and will cause a lien to be imposed on Plaintiff's Property for such penalties as well as for other penalties that Defendants have announced they will impose on Plaintiff's Property for additional purported violations of the law.

68.     Plaintiff has standing to seek the declaratory and injunctive relief at issue here because Defendants seek to have Plaintiff pay millions of dollars in penalties for non-compliance with the new ASIE law and because Plaintiff has a property interest in Roosevelt Field, on which Defendants have asserted they will impose a lien in the amount of the penalties sought to be imposed for violations of the new ASIE law.

69.     Unless the new ASIE law is declared unconstitutional and Defendants are enjoined from enforcing the new ASIE law, Plaintiff and others similarly situated will continue to suffer great and irreparable harm.

## <u>COUNT II: VIOLATION OF PROCEDURAL DUE PROCESS</u>

70.     Paragraphs 1 through 69 are incorporated as if set forth in full here.

16

71.     Defendants have committed acts which operate to deprive Plaintiff of its rights secured by the Constitution of the United States.

72.     In particular, Defendants have violated Plaintiff's procedural due process rights under the Due Process Clause of the United States Constitution, incorporated against the States through the Fourteenth Amendment, which provides that: "No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"  U.S. Const., Amdt. 14

73.     Pursuant to 42 U.S.C. § 1983, Plaintiff is authorized to file a lawsuit against Defendants to vindicate its rights under the United States Constitution.

74.     The new ASIE law, both on its face and as applied to Plaintiff, violates the Due Process Clause.

75.     The new ASIE law and Defendants' efforts to enforce the law have violated Plaintiff's procedural due process rights because Plaintiff received no notice that Defendants intended to penalize Plaintiff with millions of dollars in penalties under the new law for failure to file ASIE reports in 2014 and 2015, and because Plaintiff was not afforded notice of its right to a hearing at which it could challenge the penalties assessed against it under the new law.    In particular, Defendants have violated Plaintiff's procedural due process rights as follows:

(i)     Contrary to § 4.0(a) of the Assessor's rules, Plaintiff was not given notice of its right to cure, or of its right to a hearing before a penalty may be imposed, on account of its alleged failure to file income and expense statements for 2013 and 2014.

(ii)    Pursuant to § 4.0(a) of the Assessor's rules, the Defendant, Nassau County Department of Assessment, and the Defendant, James E. Davis, as Acting Assessor, had a duty enjoined upon them by law to provide written notice to all income-producing property owners who failed to file a timely income and expense statement for 2013 and/or 2014, advising them of their right to cure, and right to a hearing, before any penalty may be imposed.

(iii)   The above Defendants breached that duty by systematically failing to devise and implement standard procedures for providing notices to affected income-

17

producing property owners in a manner designed to ensure that the notices are properly addressed and mailed.

(iv)     Defendants only provided Plaintiff with notice of penalties for non-compliance with the new ASIE law with regard to 2 of the lots comprising Plaintiff's Roosevelt Field property. Defendants never provided Plaintiff with notice of any penalties for non-compliance regarding the remaining 30 lots comprising Roosevelt Field.

(v)      Defendants never provided Plaintiff with any opportunity to challenge the validity or amount of the millions of dollars in penalties assessed to Plaintiff for its purported non-compliance with the ASIE law.

76.      In addition to the foregoing violations of Plaintiff's procedural due process rights, the new ASIE law on its face violates the Fourteenth Amendment's procedural due process protections in the following ways:

(i)      The Assessor bears no responsibility for notifying income-producing property owners of what exactly was deficient in their ASIE submissions, such as what documentation was not compliant or what was purportedly not provided.

(ii)     The Assessor has the power to designate the person to serve as the hearing officer for any hearing challenging a penalty, thereby precluding any independent and impartial review of the matter.

(iii)    The Assessor is afforded unbridled discretion to take action against property owners for not producing any and all documentation which the Assessor in its sole and unlimited discretion deems relevant.

(iv)     The hearing officer may only review certain narrow matters, excluding whether the income producing property owner was ever notified of the obligations regarding all of the new filing requirements and penalties associated with non-compliance.

(v)      The burden of proof in any hearing challenging the validity of an assessed penalty under the new ASIE law lies with the commercial property owner, not with the Assessor seeking to impose the penalty.

(vi)     Notwithstanding any hearing before a hearing officer, the Assessor still makes the final determination as to whether and to what extent penalties should be imposed for non-compliance with the new ASIE law.

77.     Accordingly, it is clear that the new ASIE law and Defendants' efforts to enforce the law fail to afford procedural due process and are unconstitutional, both on their face and as applied to Plaintiff.

78.     Defendants have acted under color of state law.

79.     A valid case or controversy exists for this Court to declare the new ASIE law and Defendants' efforts to enforce the new law unconstitutional, because Defendants have already notified Plaintiff that it has been assessed millions of dollars in penalties for non-compliance with the new law, and will cause a lien to be imposed on Plaintiff's Property for such penalties.

80.     Plaintiff has standing to seek the declaratory and injunctive relief at issue here because Defendants seek to have Plaintiff pay millions of dollars in alleged penalties for non-compliance with the new ASIE law and because Plaintiff has a property interest in Roosevelt Field on which Defendants have indicated they will impose a lien in the amount of the penalties sought to be imposed for purported violations of the new ASIE law.

81.     Unless the new ASIE law is declared unconstitutional and Defendants are enjoined from enforcing the new ASIE law, Plaintiff and others similarly situated will continue to suffer great and irreparable harm.

## COUNT III: VIOLATION OF SUBSTANTIVE DUE PROCESS

82.     Paragraphs 1 through 81 are incorporated as if set forth in full here.

83.     Defendants have committed acts which operate to deprive Plaintiff of its rights secured by the Constitution of the United States.

84.     In particular, Defendants have violated Plaintiff's substantive due process rights under the Due Process Clause of the United States Constitution, incorporated against the States

through the Fourteenth Amendment, which provides that: "No person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const., Amdt. 14

85.     Pursuant to 42 U.S.C. § 1983, Plaintiff is authorized to file a lawsuit against Defendants to vindicate its rights under the United States Constitution.

86.     The Due Process Clause protects the rights of those who engage in lawful economic activity, subject only to regulations that are rationally related to a legitimate governmental purpose.

87.     The new ASIE law, both on its face and as applied to Plaintiff, violates the Due Process Clause.

88.     Specifically, the new ASIE law and Defendants' efforts to enforce the law have violated Plaintiff's substantive due process rights because they are not rationally related to any legitimate governmental interest.

89.     No commercial income-producing properties in Nassau County have been reassessed based on the submission of ASIE reports for 2013 and 2014 that were submitted in 2014 and 2015.

90.     In fact, County-wide reassessments have been frozen since 2011.

91.     The next reassessment will not occur until 2019 at the earliest.

92.     Consequently, the Nassau County Department of Assessment has no legitimate basis for claiming that it will utilize income and expense statements submitted in 2014 and 2015 for the purpose of reassessing commercial income-producing properties in Nassau County as part of a future planned reassessment of such properties.  Absent such actual or intended use of income and expense statements, the imposition of millions of dollars in penalties upon Plaintiff

20

for not having filed ASIE reports for 2013 and 2014, amounts to an irrational and unconstitutional exercise of Defendants' authority.

93.     Accordingly, it is clear that the new ASIE law and Defendants' efforts to enforce the law are not rationally related to and do not advance any legitimate governmental purpose or concern, and are unconstitutional, both on their face and as applied to Plaintiff.

94.     Defendants have acted under color of state law.

95.     A valid case or controversy exists for this Court to declare the new ASIE law and Defendants' efforts to enforce the new law unconstitutional, because Defendants have already notified Plaintiff that it has been assessed millions of dollars in penalties for purported non-compliance with the law, and will cause a lien to be imposed on Plaintiff's Property for such penalties as well as for other penalties that Defendants have announced they will impose on Plaintiff's Property for additional purported violations of the new ASIE law.

96.     Plaintiff has standing to seek the declaratory and injunctive relief at issue here because Defendants seek to have Plaintiff pay millions of dollars in alleged penalties for non-compliance with the new ASIE law and because Plaintiff has a property interest in Roosevelt Field, on which Defendants have indicated they will impose a lien in the amount of the penalties sought to be imposed for purported violations of the new ASIE law.

97.     Unless the new ASIE law is declared unconstitutional and Defendants are enjoined from enforcing the new ASIE law, Plaintiff and others similarly situated will continue to suffer great and irreparable harm.

## COUNT IV: VIOLATION OF N.Y. CONST., ART. 1, § 6

98.     Paragraphs 1 through 97 are incorporated as if set forth in full here.

99.    The Defendants have committed acts which operate to deprive Plaintiff of its rights secured by article I, § 6 of the New York Constitution.

100.    Article I, § 6 of the New York Constitution provides that: "No person shall be deprived of life, liberty or property without due process of law."  N.Y. Const. art. I, § 6.

101.    The new ASIE law and Defendants' efforts to enforce the law have violated Article I, § 6 of the New York Constitution because they are not rationally related to any legitimate governmental interest.

102.    No commercial income-producing properties in Nassau County have been reassessed based on the submission of ASIE reports from 2013 and 2014 that were collected in 2014 and 2015.

103.    In fact, assessments have been frozen since 2011. The next reassessment will not occur until 2019 at the earliest.

104.    Consequently, the Nassau County Department of Assessment has no legitimate basis for claiming that it will utilize income and expense statements submitted in 2014 and 2015 for the purpose of reassessing commercial income-producing properties in Nassau County as part of a future planned reassessment of such properties.

105.    Absent such actual or intended use of income and expense statements, the imposition of millions of dollars in penalties upon Plaintiff for not having filed ASIE reports for 2013 and 2014, amounts to an irrational and unconstitutional exercise of Defendants' authority.

106.    The new ASIE law and Defendants' efforts to enforce the law have also violated Article I, § 6 of the New York Constitution because Plaintiff received no notice that Defendants intended to penalize Plaintiff with millions of dollars in penalties under the new law for failure to file ASIE reports in 2014 and 2015, and because Plaintiff was not afforded notice of its right to a

22

hearing at which it could challenge the penalties assessed to it under the new law.  In particular, Defendants have violated Plaintiff's rights under Article I, § 6 of the New York Constitution as follows:

(i)  Contrary to § 4.0(a) of the Assessor's rules, Plaintiff was not given notice of its right to cure, or of its right to a hearing before a penalty may be imposed, on account of its alleged failure to file income and expense statements for 2013 and 2014.

(ii)  Pursuant to § 4.0(a) of the Assessor's rules, the Defendant, Nassau County Department of Assessment, and the Defendant, James E. Davis, as Acting Assessor, had a duty enjoined upon them by law to provide written notice to all income-producing property owners who failed to file a timely income and expense statement for 2013 and/or 2014, advising them of their right to cure, and right to a hearing, before any penalty may be imposed.

(iii)  The above Defendants breached that duty by systematically failing to devise and implement standard procedures for providing notices to affected income-producing property owners in a manner designed to ensure that the notices are properly addressed and mailed.

(iv)  Defendants only provided Plaintiff with notice of penalties for non-compliance with the new ASIE law with regard to 2 of the lots comprising Plaintiff's Roosevelt Field property.  Defendants never provided Plaintiff with notice of any penalties for non-compliance regarding the remaining 30 lots comprising Roosevelt Field.

(v)  Defendants never provided Plaintiff with any opportunity to challenge the validity or amount of the millions of dollars in penalties assessed to Plaintiff for its purported non-compliance with the ASIE law.

107.  In addition to the foregoing violations of Plaintiff's rights under Article I, § 6 of the New York Constitution, the new ASIE law on its face violates the protections provided in Article I, § 6 of the New York Constitution in the following ways:

(i)  The Assessor bears no responsibility for notifying income-producing property owners of what exactly was deficient in their ASIE submissions, such as what documentation was not compliant or what was purportedly not provided.

(ii)  The Assessor has the power to designate the person to serve as the hearing officer for any hearing challenging a penalty, thereby precluding any independent review of the matter.

23

(iii)     The Assessor is afforded unbridled discretion to take action against property owners for not producing any and all documentation which the Assessor in its sole and unlimited discretion deems relevant.

(iv)     The hearing officer may only review certain narrow matters, excluding whether the income producing property owner was ever notified of the obligations regarding all of the new filing requirements and penalties associated with non-compliance.

(v)     The burden of proof in any hearing challenging the validity of an assessed penalty under the new ASIE law lies with the commercial property owner, not with the Assessor seeking to impose the penalty.

(vi)     Notwithstanding any hearing before a hearing officer, the Assessor still makes the final determination as to whether and to what extent penalties should be imposed for non-compliance with the new ASIE law.

108.     The purpose of the new ASIE law is to unreasonably and excessively punish non-compliance with the reporting requirements set forth in the law while simultaneously making compliance much more difficult, subjective and ambiguous.  As such, property owners like Plaintiff are now facing penalties for non-compliance that are thousands of times greater than under the prior version of the ASIE law.

109.     Unless the new ASIE law is declared unconstitutional under Article I, § 6 of the New York Constitution and Defendants are enjoined from enforcing the new ASIE law, Plaintiff and others similarly situated will continue to suffer great and irreparable harm.

## COUNT V: VIOLATION OF N.Y. CONST., ART. 1, § 5

110.     Paragraphs 1 through 109 are incorporated as if set forth in full here.

111.     Defendants have committed acts which operate to deprive Plaintiff of its rights secured by article I, § 5 of the New York Constitution.

112.     Article I, § 5 of the New York Constitution provides that: "Excessive bail shall not be required, nor excessive fines imposed."  N.Y. Const. Art. I, § 5.

24

113.    Article I, § 5 of the New York Constitution embodies the notion that there must be some proportionality between offense and punishment.  It limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.

114.    A punitive fine violates Article I, § 5 of the New York Constitution if it is grossly disproportional to the gravity of a defendant's offense.

115.    The new ASIE law, both on its face and as applied here, violates Article I, § 5 of the New York Constitution.

116.    For conduct that for many years was punishable by a mere $500 fine under the ASIE law, became punishable in 2014 by a fine in the millions of dollars with the newly enacted ASIE law.  Following the enactment of the new ASIE law, without notice or a hearing, Defendants started punishing Plaintiff with fines in the millions of dollars for non-compliance with the ASIE law.  Defendant's fines imposed upon Plaintiff since 2014 for non-compliance with the ASIE law are grossly disproportional to the gravity of the purported offense.

117.    Unless the new ASIE law is declared unconstitutional and Defendants are enjoined from enforcing the new ASIE law, Plaintiff and others similarly situated will continue to suffer great and irreparable harm.

## COUNT VI: VIOLATION UNDER CPLR § 7803

118.    Paragraphs 1 through 117 are incorporated as if set forth in full here.

119.    Under New York law, a penalty imposed by an agency is subject to judicial review where the "determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed."  CPLR § 7803.

120.   Additionally, an agency's actions are subject to judicial review where the agency has "proceeded, is proceeding or is about to proceed without or in excess of jurisdiction."  CPLR § 7803.

121.   Defendants have committed acts which operate to deprive Plaintiff of its rights secured by CPLR § 7803.

122.   As applied here, the imposition by Defendants of millions of dollars in penalties against Plaintiff for purported non-compliance with the new ASIE law, without prior notice to Plaintiff, without holding a hearing of any kind regarding the validity or extent of such penalties, without giving Plaintiff any opportunity to challenge the validity or extent of the penalties, and without providing any reasoned analysis or rational basis for the imposition of such severe penalties, demonstrates beyond any question the irrational, arbitrary, and capricious manner in which these penalties against Plaintiff were implemented.

123.   Thus, Defendants abused their discretion in imposing millions of dollars in penalties against Plaintiff for purported non-compliance with the new ASIE law.

124.   Additionally, Defendants have abused their discretion under Article 78 of New York's Civil Practice Law and Rules in requiring Plaintiff to disclose its highly confidential and proprietary information comprising its trade secrets, without sufficient protections, which would substantially impair Plaintiff's ability to compete effectively in the marketplace.

125.   The materials Plaintiff is required to disclose in ASIE reports include, among other things, rental rates, percentage rent, ancillary charges, and tenant improvement allowances. Such information comprises Plaintiff's trade secrets.

126.   If Plaintiff is required to file ASIE reports for Roosevelt Field in order to avoid monetary penalties, such statements would necessarily disclose highly confidential and propriety

information respecting its leases and other business dealings without sufficient protection, thereby impairing Plaintiff's ability to compete effectively in the regional shopping mall marketplace.

127.    Although the ASIE law includes a confidentiality provision, it allows for the publication of statistics which, as applied to Plaintiff -- a uniquely sized shopping mall -- would reveal enough specific information as to render illusory the promise of confidentiality. Moreover, Defendants have not adopted procedures which would reasonably ensure the confidentiality of the information provided.

128.    Plaintiff's interest in commercial privacy outweighs any legitimate need of Defendants for the highly confidential income and expense information sought by Defendants in the ASIE reports.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff requests the following relief:

A.    Entry of a declaratory judgment in favor of Plaintiff and against Defendants:

(i)    declaring that the new ASIE law complained of herein is unconstitutional both on its face and as applied to Plaintiff with regard to the assessment of penalties for non-compliance with the law;

(ii)    declaring that the penalties imposed against Plaintiff for purported non-compliance with the new ASIE law are arbitrary, capricious, an abuse of Defendants' discretion, and are invalid, null and void;

B.    Entry of a permanent injunction against Defendants prohibiting Defendants from seeking to collect or pursue the collection of any of the penalties imposed upon Plaintiff for its purported non-compliance with the new ASIE law substantively complained of herein;

C.      An award of Plaintiff's costs and expenses of this action, together with its reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, as a prevailing party on the federal constitutional claims brought herein pursuant to 42 U.S.C. § 1983; and

D.      Such other relief as this Court deems just and proper.

Dated: April 11, 2017

FORCHELLI, CURTO, DEEGAN,
SCHWARTZ, MINEO & TERRANA, LLP

By: _____
John V. Terrana
Jeffrey G. Stark
Michael A. Ciaffa
The Omni
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
(516) 248-1700

James T. Smith (*pro hac vice* motion to be filed)
Evan H. Lechtman (*pro hac vice* motion to be filed)
Lewis Schlossberg (*pro hac vice* motion to be filed)
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
(215) 569-5500

*Attorneys for Plaintiff*